**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BEIONCA HARRIS, as wrongful death beneficiary of the ESTATES OF NASIR HARPER and LIAM HARPER<br>1333 S 54th Street<br>Philadelphia, PA 19143,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br>99 New York Avenue, NE<br>Washington, DC 20226,<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>and<br><br>ROBERT CEKADA, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives<br>99 New York Avenue, NE<br>Washington, DC 20226,<br><br>Defendants. | CIVIL ACTION NO: 2:26-cv-8022<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act, 5 U.S.C. §§ 555(b), 701–706) |

**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

Plaintiff, Beionca Harris, as wrongful death beneficiary of the Estates of Nasir Harper and Liam Harper, by and through her undersigned counsel, brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 701–706, against Defendants the United States Department of Justice ("DOJ"), the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF"), Todd Blanche, in his official capacity as Attorney General of the United States, and Robert Cekada, in his official capacity as Director of ATF, and in support thereof avers as follows:

**INTRODUCTION**

1. On March 27, 2020, a fire tore through a rowhome at 2046 Bonnaffon Street in Southwest Philadelphia. Four-year-old Nasir Harper-Wilford, Jr., one-year-old Liam Harper, and their grandmother, Nassira Harper, could not escape. All three died of carbon monoxide toxicity and smoke inhalation.

2. ATF investigated the cause and origin of the fire, photographed the scene in its original condition, and took possession of the physical evidence—including, upon information and belief, the remnants of the home's smoke alarms, smoke detectors, and fire suppression equipment. Days later, the City of Philadelphia ordered the home gutted. ATF's photographs, physical evidence, and investigative file are now the only evidence of what the home looked like, and whether its life-safety systems worked, on the night two small children died inside it.

3. Plaintiff, the children's mother, has been trying to obtain that evidence for nearly five years. She served a subpoena on ATF in December 2021. She served a formal request under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and DOJ's implementing regulations, 28 C.F.R. §§ 16.21–16.29, on March 30, 2023. Her counsel has followed up with ATF and the United States Attorney's Office at least two dozen times since.

4. ATF's answer has never changed: it will not release anything until it finishes its "Origin and Cause Report"—a report it has now been promising for years. ATF told Plaintiff the report would be done by March 2024. Then that it would be done in "the next couple of months" (May 2026). Then that the "target is late August" (July 2026). Each of those self-imposed deadlines

has come and gone. More than six and one-half years after the fire, ATF has produced no report, no photographs, and no physical evidence, and it has given no date by which it will.

5. ATF's open-ended deferral has real consequences. Plaintiff's wrongful death action in the Philadelphia Court of Common Pleas was stayed for nearly three years waiting on ATF. Because the state court lacks power to compel a federal agency, this Court is the only forum that can require ATF to act.

6. The APA requires every agency, "within a reasonable time," to "proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and empowers this Court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). ATF's years-long, indefinite deferral of any decision to release the evidence is unreasonable by any measure. Plaintiff asks the Court to declare the delay unlawful and to order Defendants to act on a fixed and expedited schedule.

**PARTIES**

7. Plaintiff, Beionca Harris, is an adult individual residing at 1333 S 54th Street, Philadelphia, Pennsylvania 19143. She is the mother of Nasir Harper-Wilford, Jr. and Liam Harper and brings this action as the wrongful death beneficiary of their Estates. She is the plaintiff in *Harris v. Philadelphia Lotus 08, LLC, et al.*, March Term, 2021, No. 01699 (consolidated with March Term, 2022, No. 02688), pending in the Court of Common Pleas of Philadelphia County (the "State Court Action").

8. Defendant United States Department of Justice is an executive department of the United States and an "agency" within the meaning of 5 U.S.C. § 551(1). DOJ promulgated and administers the regulations governing the production of DOJ information in response to demands in proceedings to which the United States is not a party. 28 C.F.R. §§ 16.21–16.29.

9. Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives is a component of DOJ and an “agency” within the meaning of 5 U.S.C. § 551(1). ATF conducted the investigation of the fire and has custody of the photographs, physical evidence, and investigative file sought by Plaintiff. ATF maintains its Philadelphia Field Division at 601 Walnut Street, Suite 1000E, Philadelphia, Pennsylvania 19106.

10. Defendant Todd Blanche is the Attorney General of the United States and the head of DOJ. He is sued in his official capacity only.

11. Defendant Robert Cekada is the Director of ATF. He is responsible for ATF’s operations, including its investigations and its responses to demands for ATF information. He is sued in his official capacity only.

## **JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. §§ 555(b) and 701–706. The Court may grant declaratory and further relief under 28 U.S.C. §§ 2201–2202.

13. The United States has waived sovereign immunity for this action, which seeks relief other than money damages and alleges that an agency and its officers failed to act in an official capacity. 5 U.S.C. § 702.

14. An agency’s “failure to act” is “agency action” subject to judicial review. 5 U.S.C. §§ 551(13), 701(b)(2), 706(1). An agency’s decision on a *Touhy* request is likewise reviewable under the APA. *See Davis Enters. v. EPA*, 877 F.2d 1181 (3d Cir. 1989). No statute or regulation requires Plaintiff to pursue any further administrative remedy before seeking judicial review, and none is available. *See Darby v. Cisneros*, 509 U.S. 137 (1993).

15. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants are an agency of the United States and officers of the United States sued in their official capacities, and (a) a substantial part of the events and omissions giving rise to the claims occurred in this District—the fire occurred in Philadelphia, ATF's investigation is being conducted by and through its Philadelphia Field Division, Plaintiff's *Touhy* request was directed to ATF's Philadelphia office, and ATF has communicated with Plaintiff through the United States Attorney's Office for the Eastern District of Pennsylvania; and (b) Plaintiff resides in this District and no real property is involved in this action.

## LEGAL FRAMEWORK

### A. The Administrative Procedure Act

16. The APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

17. The APA further provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A claim under § 706(1) may proceed where the plaintiff asserts that an agency failed to take a discrete agency action that it is required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

18. In the Third Circuit, the "polestar" of the unreasonable-delay inquiry "is reasonableness." *Public Citizen Health Research Grp. v. Chao*, 314 F.3d 143 (3d Cir. 2002); *see also Oil, Chem. & Atomic Workers Union v. OSHA*, 145 F.3d 120 (3d Cir. 1998). Courts consider whether the delay is excessive, whether the agency has blown through its own announced timetables, and whether any justification offered for the delay is legitimate. Courts also look to the factors identified in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d

70, 80 (D.C. Cir. 1984): (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) any timetable Congress has supplied; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the nature and extent of the interests prejudiced by delay; and (6) the court need not find impropriety to hold that agency action is unreasonably delayed.

19. A reviewing court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**B. DOJ's *Touhy* Regulations**

20. DOJ's *Touhy* regulations govern the disclosure of DOJ material, including ATF files, in response to a subpoena or other demand in a case in which the United States is not a party. 28 C.F.R. §§ 16.21–16.29. Under those regulations, the responsible DOJ official, upon receiving a demand, must notify the component that originated the material and determine whether disclosure is appropriate. 28 C.F.R. §§ 16.22, 16.24.

21. In making that determination, DOJ officials must consider whether disclosure is appropriate under the rules of procedure governing the case and under the relevant substantive law of privilege. 28 C.F.R. § 16.26(a). The regulations list specific circumstances in which disclosure will not be made, including where disclosure "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5).

22. Nothing in the *Touhy* regulations authorizes DOJ or ATF to defer a decision on a demand indefinitely, or to withhold all material—including photographs and physical evidence that reveal no investigative technique—simply because an investigation remains nominally "open."

## FACTUAL ALLEGATIONS

### A. The Fire and ATF's Exclusive Possession of the Evidence

23. Plaintiff's decedents, Nasir Harper-Wilford, Jr. (age four) and Liam Harper (age one), lived at 2046 Bonnaffon Street, Philadelphia, Pennsylvania 19142 (the "Property") with their grandmother, Nassira Harper.

24. On March 27, 2020, a fire engulfed the Property. Nasir, Liam, and their grandmother could not escape and died of carbon monoxide toxicity and smoke inhalation.

25. ATF responded to and investigated the cause and origin of the fire. ATF photographed the scene in its original condition and took possession of the physical evidence from the Property.

26. Immediately after the fire, the City of Philadelphia Department of Licenses and Inspections issued a "Make Safe" order, and the Property was gutted before Plaintiff's counsel or experts could inspect it.

27. As a result, ATF's photographs, physical evidence, and investigative file are the only remaining evidence of the condition of the Property at the time of the fire. They are irreplaceable.

**B. The State Court Action**

28. In March 2021, Plaintiff commenced the State Court Action against the owners and managers of the Property. Plaintiff alleges, among other things, that the Property lacked adequate smoke alarms, smoke detectors, and fire suppression systems.

29. ATF's evidence is central to the State Court Action. It is the primary proof of whether the Property had working smoke alarms, smoke detectors, and fire suppression systems, and of the cause and origin of the fire. ATF's report is also the primary means of identifying the personnel who responded to the fire and the investigator who authored the report—witnesses Plaintiff must depose. Plaintiff's cause-and-origin and fire-protection experts cannot complete their analyses without it.

30. All parties to the State Court Action—including the defendants—have represented to the state court that ATF's evidence is "essential to the prosecution and defense of the claims" in that case.

**C. Plaintiff's Subpoena and *Touhy* Request**

31. On or about December 1, 2021, Plaintiff served a subpoena on ATF seeking an in-person review of all physical evidence obtained from the scene of the fire and "any documents or reports." ATF produced nothing.

32. On March 30, 2023, Plaintiff's counsel served a formal *Touhy* request on ATF's Philadelphia Field Division, with a copy to Assistant United States Attorney Joel M. Sweet of the United States Attorney's Office for the Eastern District of Pennsylvania, who was handling the matter on ATF's behalf (the "*Touhy* Request"). A true and correct copy of the *Touhy* Request is attached as **Exhibit A**.

33. The *Touhy* Request explained the relevance of the information to the State Court Action, stated that Plaintiff "has no other means to obtain this information," and specifically requested: (a) all physical evidence removed from the Property, including remnants of furniture, household items, smoke detectors, fire alarms, and fire suppression systems; (b) all laboratory evidence related to analysis of items taken from the scene; (c) all photographs of the fire scene; (d) all transcripts of interviews related to the fire; and (e) all investigative reports related to the fire.

34. The *Touhy* Request expressly stated that Plaintiff was not seeking testimony and offered to discuss payment for the information before its production.

**D. ATF Repeatedly Promises, and Repeatedly Misses, Its Own Deadlines**

35. Plaintiff's counsel followed up on the *Touhy* Request on June 7, 2023, July 10, 2023, July 20, 2023, November 16, 2023, and December 5, 2023.

36. In the meantime, on or about September 13, 2023, on the joint application of the parties, the state court stayed the State Court Action pending ATF's investigation and the release of the subpoenaed and requested materials. The stay rested on the expectation that ATF would complete its investigation and release its report and evidence within a reasonable time.

37. On December 5, 2023, AUSA Sweet advised Plaintiff's counsel that ATF expected to complete its investigation by March 2024.

38. ATF did not complete its investigation by March 2024. Plaintiff's counsel followed up on March 8, 2024, April 10, 2024, May 30, 2024, June 6, 2024, and July 1, 2024, and was told that ATF had no update.

39. On August 6, 2024, Plaintiff's counsel sent a formal letter to ATF and AUSA Sweet demanding production of the requested materials by August 23, 2024. A true and correct copy of the August 6, 2024 letter is attached as **Exhibit B**.

40. On August 23, 2024, AUSA Sweet informed Plaintiff's counsel by telephone that ATF had still not completed its investigation and that Plaintiff could either continue with monthly check-ins for the report, or ATF could "close the *Touhy* request, as the investigation is still incomplete."

41. On October 9, 2024, in response to a further status inquiry, AUSA Sweet wrote: "Sorry, nothing to report." When Plaintiff's counsel pressed, AUSA Sweet wrote that "ATF cannot produce what does not exist," and that Plaintiff could either receive a formal response stating that no responsive documents existed or "wait until ATF completes its investigation and issues a report."

42. ATF's photographs of the scene and the physical evidence it removed from the Property did exist, and upon information and belief continue to exist, regardless of whether ATF had finished writing its report.

43. On February 3, 2025, AUSA Sweet advised that he was leaving DOJ and that AUSA Viveca Parker would handle the matter. On February 4, 2025, Plaintiff's counsel asked AUSA Parker to discuss the matter, explaining that Plaintiff had no status on the investigation and "need[ed] access to the scene photos."

44. On February 6, 2025, AUSA Parker responded that ATF's attorney was "asking me to prepare a denial of the *Touhy* request." On February 14, 2025, AUSA Parker transmitted a letter responding to the *Touhy* Request (the "February 2025 Letter"). A true and correct copy of the February 2025 Letter is attached as **Exhibit C**. The letter summarily stated that the "ATF's

investigation is still open, and the Origin & Cause Report has not yet been authored. As such, the release of any evidence, transcripts, reports, photographs, etc., could interfere with enforcement proceedings. For these reasons, your request for these items is denied."

45. ATF has since made clear that its refusal is not a considered determination that the requested materials are permanently exempt from disclosure, but rather a deferral tied entirely to the completion of its report. On June 2, 2025, AUSA Parker wrote: "The O&C report are not completed; our denial of the request remains."

46. Over the following year, ATF repeated the same position without elaboration:

> (a) August 8, 2025: "I am told this is still an open investigation." Later the same day: "we are not able to discuss open investigations."
>
> (b) October 8, 2025: "the Origin and Cause Report is not yet complete. As such, the case is still open and we cannot disclose the report or any details of the investigation at this time."
>
> (c) March 5, 2026: "there is no change in its position – the investigation remains open and the Origin and Cause Report is not complete."
>
> (d) May 4, 2026: "the report is not finished but we sincerely hope it will be in the next couple of months. Unfortunately, we do not control the completion of the report."
>
> (e) June 1, 2026: "Sorry but not yet."
>
> (f) July 1, 2026: "I am informed that the target is late August."

47. True and correct copies of the foregoing correspondence are attached as **Exhibit D**.

48. ATF did not complete its report in "late August" 2026. As of the filing of this Complaint, ATF has not completed its report, has not produced any of the requested materials, and has not identified any date by which it will.

49. ATF has never explained why its investigation of a residential fire has remained open for more than six and one-half years, what enforcement proceeding (if any) disclosure would

interfere with, or why photographs of the scene and the physical remnants of the home's smoke alarms and detectors cannot be made available for inspection. Upon information and belief, no criminal charges have been filed in connection with the fire.

**E. Plaintiff's Efforts in State Court and the Resulting Prejudice**

50. On June 24, 2026, with the agreement of all parties, Plaintiff's counsel wrote to the state court requesting a status conference to address the indefinite stay and ATF's failure to produce. At the state court's request, the parties then jointly moved to lift the stay on July 17, 2026.

51. On or about July 22, 2026, the state court lifted the stay and granted the parties leave to file a motion to enforce the subpoena served on ATF and "to pursue such further relief as may be necessary to obtain the evidence and investigative report in the agency's possession."

52. On July 27, 2026, Plaintiff moved in the state court to enforce her subpoena to ATF. ATF removed that motion to this Court, which, on July 27, 2026, quashed the subpoena on the ground that sovereign immunity bars a state court from compelling a federal agency to comply with a subpoena.

53. Because a state court cannot compel ATF to produce the evidence, an action in this Court under the APA is Plaintiff's only avenue for relief.

54. Meanwhile, the State Court Action is proceeding without the evidence. The pretrial memorandum deadline is December 7, 2026, and trial is scheduled for January 4, 2027.

55. Unless ATF is compelled to act promptly, Plaintiff will be forced to try the wrongful death claims of her two young children without the only evidence of the condition of the home in which they died. That harm cannot be undone after trial.

**COUNT I**
**Agency Action Unlawfully Withheld or Unreasonably Delayed**
**(5 U.S.C. §§ 555(b), 706(1))**

56. Plaintiff incorporates paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff's *Touhy* Request is a "matter presented to" ATF and DOJ within the meaning of 5 U.S.C. § 555(b). Defendants have a nondiscretionary duty to proceed to conclude that matter "within a reasonable time."

58. Defendants have not concluded the matter. By their own account, Defendants' refusal to release the requested materials is not a final determination that the materials are exempt from disclosure; it is an open-ended deferral of disclosure "until ATF completes its investigation and issues a report." Defendants have thus withheld, and continue to withhold, a discrete agency action: a final, reasoned determination of whether, and to what extent, the requested materials will be released.

59. Defendants have likewise unreasonably delayed completion of the Origin and Cause Report—the event on which Defendants have conditioned any disclosure—and have repeatedly announced, and then missed, their own deadlines for completing it.

60. Defendants' delay is unreasonable under the governing factors:

(a) **Rule of reason.** More than six and one-half years have passed since the fire, nearly five years since Plaintiff's subpoena, and more than three and one-half years since the *Touhy* Request. No rule of reason permits an agency to defer a decision on a discrete records request for that long. Courts have found delays of a few years in far more complex matters to be unreasonable.

(b) **Defendants' own timetables.** Defendants told Plaintiff the investigation would be complete by March 2024, then within "the next couple of months" after May 2026, then by "late August" 2026. Defendants missed every one of those self-imposed deadlines.

(c) **Human health and welfare.** This matter concerns the deaths of two young children and an adult in a residential fire, and whether the home's smoke alarms, smoke detectors, and fire suppression

> systems were adequate. Delay is least tolerable where, as here, human life and safety are at stake.
>
> (d) **Competing priorities.** Making available a set of scene photographs and existing physical evidence for inspection, and rendering a decision on a single *Touhy* request, would impose a minimal burden on Defendants and would not displace any higher-priority agency activity.
>
> (e) **Interests prejudiced.** Plaintiff's interest in obtaining irreplaceable evidence for her children's wrongful death claims is substantial, and the prejudice from further delay is severe and imminent, with a trial date imminent.
>
> (f) **No impropriety required.** Plaintiff need not show bad faith to establish unreasonable delay. Defendants have, in any event, never offered any explanation for the length of the investigation.

61. Defendants' failure to act has caused and will continue to cause Plaintiff irreparable harm for which she has no adequate remedy other than relief from this Court.

62. Plaintiff is therefore entitled to an order under 5 U.S.C. § 706(1) compelling Defendants to conclude the matter by a date certain.

**COUNT II (In the Alternative)**
**Arbitrary and Capricious Agency Action**
**(5 U.S.C. § 706(2)(A))**

63. Plaintiff incorporates paragraphs 1 through 55 as though fully set forth herein.

64. In the alternative, to the extent the February 2025 Letter or Defendants' subsequent statements constitute final agency action denying the *Touhy* Request, that action is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and should be set aside under 5 U.S.C. § 706(2)(A).

65. Defendants' denial is arbitrary and capricious because, among other things, Defendants: (a) applied a blanket refusal, of indefinite duration, based solely on the investigation being "open," without explaining how disclosure of any particular material "would interfere with

enforcement proceedings or disclose investigative techniques and procedures," as 28 C.F.R. § 16.26(b)(5) requires; (b) failed to consider whether photographs of the scene and the physical evidence removed from the Property—which reveal no investigative technique or confidential source—could be made available, in whole or in part, or subject to appropriate conditions; (c) failed to consider whether disclosure is appropriate under the rules of procedure governing the State Court Action and the relevant substantive law of privilege, as 28 C.F.R. § 16.26(a) requires; (d) failed to consider Plaintiff's compelling need for irreplaceable evidence, the absence of any alternative source, and the prejudice caused by years of delay; and (e) failed to offer any reasoned explanation for continuing to withhold the materials more than six years after the fire.

66. Plaintiff is therefore entitled to an order setting aside Defendants' denial and remanding to Defendants with instructions to issue a new, reasoned determination on an expedited schedule.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and:

(a) Declare that Defendants' failure to conclude Plaintiff's *Touhy* Request, and their failure to complete the Origin and Cause Report on which they have conditioned any disclosure, constitutes agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. §§ 555(b) and 706(1);

(b) Order Defendants, within thirty (30) days of the Court's order or such other expedited period as the Court deems just, to issue a final, reasoned determination on Plaintiff's *Touhy* Request that addresses each category of requested material, without further deferral pending completion of ATF's investigation;

(c) Order Defendants, within thirty (30) days of the Court's order or such other expedited period as the Court deems just, to complete the Origin and Cause Report or, if they cannot, to file a declaration explaining why and identifying a date certain by which it will be completed;

(d) In the alternative, hold unlawful and set aside Defendants' denial of Plaintiff's *Touhy* Request under 5 U.S.C. § 706(2)(A), and remand to Defendants with instructions to issue a new determination within thirty (30) days that complies with 28 C.F.R. § 16.26 and specifically addresses whether the scene photographs and physical evidence can be made available for inspection;

(e) Retain jurisdiction over this matter to ensure compliance with the Court's orders, and require Defendants to file periodic status reports until they have fully complied;

(f) Award Plaintiff her reasonable costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

(g) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**SALTZ MONGELUZZI BENDESKY**

BY: */s/ John L. Lang*
LARRY BENDESKY (PA ID 51026)
ROBERT W. ZIMMERMAN (PA ID 208410)
JOHN L. LANG (PA ID 327971)
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 496-8282
rzimmerman@smbb.com
jlang@smbb.com
*Attorneys for Plaintiff*

Dated: October 20, 2026